## MRS. ANNA H. KING v. MRS. MARY J. SLOAN.

(Filed 8 April, 1964.)

**1. Pleadings § 2—**

The pleadings properly contain a plain and concise statement of the ultimate facts constituting the cause of action without alleging the evidentiary facts. G.S. 1-122(2).

**2. Automobiles § 41h— Driver turning left across another's lane of traffic must ascertain that the movement may be made in safety.**

Evidence tending to show that plaintiff, traveling east on a four-lane highway, came to a stop at an interspace in the median preparatory to making a left turn into a street making a "T" intersection, that a truck was stopped in the southern lane for traffic traveling west preparatory to making a "U" turn, that after plaintiff had crossed in front of this truck plaintiff's vehicle and defendant's vehicle, which was traveling at a lawful speed in the northern lane for west-bound traffic, collided, and that the view of plaintiff and defendant of the other's car was obstructed by the truck, *is held* sufficient to be submitted to the jury on defendant's counterclaim, since it is the duty of a driver making a left turn across another's lane of travel to first ascertain if the movement may be made in safety. G.S. 20-155(b), G.S. 20-154(a).

APPEAL by plaintiff from *Riddle, S.J.,* October 28, 1963 Schedule "D" Civil Term, MECKLENBURG Superior Court.

This civil action involves a claim and counterclaim for personal injuries and property damages growing out of an automobile collision between the 1957 Chrysler owned and driven by the plaintiff, and the 1960 Ford owned and driven by the defendant. Each party by appropriate pleadings alleged the injuries and damages were proximately caused by the negligence of the other.

The accident occurred March 11, 1961, at one o'clock in the daytime on Providence Road where Andover Road dead-ends into it from the north, forming a T-intersection. A grass median several feet wide in the center of Providence Road separates the two north lanes which are marked for travel west from the two south lanes, marked for travel east. A break in the grass median is surfaced as an extension of Andover. The purpose of this break is to permit travel from the west on Providence Road to turn left across the north lanes and enter Andover, and, conversely, to permit travel from Andover to cross over the north lanes and enter the two south lanes for travel east. The break in the median also permits travel in either direction to make a U-turn and reverse direction on Providence Road. Beginning about 60 feet west of the intersection, a third lane was carved out of the south side of the grass median for use by travelers intending to turn left on Andover.

According to the plaintiff's allegation and evidence, she approached the intersection driving east on Providence Road, entered this third lane for the purpose of crossing the two north lanes and entering Andover. As she entered this third lane she flashed her signal light, indicating her intention to turn left into Andover. She stopped before beginning the intended movement. At the time a large truck was parked on the inside lane for westbound traffic, apparently intending to make a U-turn and go back east on Providence Road.

As the plaintiff began her left turn, she could see approximately 175 feet to the east along the curb line of Providence. Her view otherwise in that direction was obscured by the truck. "As to how far east of the intersection Mrs. Sloan was when I looked there and saw her coming as I was turning across Providence Road, . . . she was some little distance from me. . . . I could not tell you how fast she was coming. . . . When I saw it, (the Sloan car) I turned and tried to get out of its way. That was all just about like the snap of your finger."

As the defendant approached the intersection, she was driving 30 to 35 miles per hour (in a 45-mile per hour zone). Traffic "wasn't very heavy. . . . When I observed this truck at the intersection, I took my foot off the accelerator, . . . slowed down probably about five miles per hour. . . . As I approached the intersection and had reached the truck, I saw next in the intersection Mrs. King. . . . It, (the King car) was in the lane with the truck; . . . the front end of it . . . When I first saw the vehicle it was moving . . . the front of my vehicle was about even with the cab when I first saw the King vehicle. . . . I slammed on my brakes . . . started skidding, pulled the wheel a little . . . to the right in an effort not to hit her broadside. . . . I hit her in the front like, righthand section of the car. . . . After the collision . . . the cars didn't move much."

The parties were the only eyewitnesses to the accident. Until just before it occurred, neither had observed the other's vehicle because of the truck. Mrs. Sloan had no notice of Mrs. King's intention to cross her traffic lane.

The parties introduced medical testimony showing serious injuries and evidence as to the damages to the two vehicles. The court submitted issues of negligence which the jury answered in favor of the defendant and awarded her $20,000.00 for personal injuries, and $1,500.00 for damages to her automobile. From a judgment for the defendant in accordance with the verdict, the plaintiff appealed, assigning errors.

*Carpenter, Webb & Golding, by John G. Golding for plaintiff appellant.*

*Grier, Parker, Poe & Thompson, by William E. Poe and Gaston H. Gage; Jones, Hewson & Wollard, by Hunter M. Jones for defendant appellee.*

Higgins, J. The pleadings in this case are somewhat unusual in that they are concise, precise, and contain allegations of ultimate facts — not evidence and not conclusions. They conform to the requirement that a complaint should contain "A plain and concise statement of the facts constituting a cause of action, without unnecessary repetition." G.S. 1-122(2). "A party to an action is entitled as a matter of right to put into his pleading a concise statement of the facts constituting his cause of action or defense, and nothing more." *Patterson v. R. R.*, 214 N.C. 38, 198 S.E. 364. Doubtful it is, whether any rule of law known to our books is more frequently violated.

As the plaintiff approached the T-intersection, she stopped, gave a mechanical signal of her intention to turn left across the two north lanes and enter Andover. Her view to her right was, at least, partially obstructed by the parked truck. As she cleared the lane occupied by the truck, the vehicles ran together. There was no evidence the defendent did, or could, see the plaintiff's turn signal in time to avoid the accident.

As the defendant approached the intersection at a lawful speed, 30 to 35 miles an hour in a 45-mile per hour zone, her view of the break in the median was partially obstructed by the parked truck. She reduced speed, intending to continue on through the intersection, when suddenly, without warning, the plaintiff drove out from behind the truck, blocking her traffic lane. She applied her brakes but was unable to stop until the vehicles collided.

The investigating officer testified the two west traffic lanes on Providence were marked by a dividing line. The debris "was just about the center of the road when I got there . . . The Ford (defendant's vehicle) was astraddle of the debris. The Chrysler (plaintiff's vehicle) was . . . six or eight feet from the Ford . . . up against the curb." Twenty feet of skid marks extended from the Ford toward the east.

Both parties offered evidence of personal injuries and property damage, and the extent thereof. To the credit of both, it may be said there is a minimum of discrepancy in the evidence they gave the court and jury as to the manner in which the injuries and damages occurred. The parked truck obstructed the view each had of the approach of the other's vehicle until both vehicles were near the point of collision. In this situation the plaintiff made the blocking movement into the defendant's travel lane at a time when it proved to be unsafe. Evidence

of unlawful or negligent speed on the part of the defendant is lacking. The plaintiff said she could not tell how fast Mrs. Sloan was driving. The skid marks extended 20 feet to the rear of her vehicle which stopped "astraddle of the debris." The Chrysler was six or eight feet distant. The physical evidence does not indicate speed.

The jury's findings are amply supported by the evidence. "A left turn across an open travel lane leaves a through traveler little time and opportunity to avoid a collision. . . . in the absence of such notice, other travelers are required to assume that he intended to continue through the intersection in his proper lane of traffic." *Harris v. Parris*, 260 N.C. 524, 133 S.E. 2d 195.

On the other hand, the evidence amply supports the finding the accident occurred and the defendant's injury and damage resulted from the plaintiff's negligence in attempting to turn to the left across defendant's travel lane without ascertaining the movement could be made in safety. "Where cars are meeting at an intersection and one intends to turn across the lane of travel of the other, G.S. 20-155(b) and G.S. 20-154(a) apply. In such case the driver making the turn is under duty to give a plainly visible signal of his intention to turn, . . . and ascertain that such movement can be made in safety. . . . This, without regard to which vehicle entered the intersection first." *Fleming v. Drye*, 253 N.C. 545, 117 S.E. 2d 416.

We have examined the plaintiff's many exceptive assignments. The 21 exceptions to the charge and the 18 exceptions to the failure to charge, present nothing requiring discussion. The charge as to the duties of each driver on approaching the intersection is sustained by our decisions. The court properly presented plaintiff's contention relating to defendant's speed. The evidence of the two principals was clear-cut, free of material conflict, presented uncomplicated issues of fact which the jury answered in favor of the defendant. In the trial, we find

No error.